## Page Estate

*High, Swartz, Childs & Roberts,* for accountants.

*Henderson, Wetherill & O'Hey,* for claimant.

TAXIS, P. J., November 5, 1959.—The account shows a net balance for distribution of $418,222.24, composed of the securities set forth on pages 2, 3 and 4, totaling altogether $519,690.30, there being due accountants out of said unconverted investment securities the sum of $2,499.39.

L. Rodman Page died January 9, 1949, leaving a will which was duly probated on January 13, 1949, wherein he left the residue of his estate to his trustees in trust to pay the income to his wife, Janet Adamson Page, until her death or remarriage, whichever first occurred, and thereupon to pay the income in equal shares to his sons, Richard K. Page and L. Rodman Page, Jr., for life with remainder to their children.

Item sixth reads as follows: "I authorize my Trustees to purchase or construct a home for my wife, Janet Adamson Page at a total cost, including therein the cost of any real estate, not to exceed $25,000, taking the title thereto in the name of my Trustees. Out of the net income of my residuary estate, my Trustees shall pay all taxes, repairs, carrying charges, insurance and other expenses necessary to keep the house and grounds in proper condition. If my said wife shall desire to change her residence, upon her written request my Trustees may sell such home and may apply all or the necessary part of the proceeds to the purchase of another home suitable to the wishes of my wife, adding the surplus if any to the principal of the residuary trust. My Trustees shall have the right to make more than one substitution, if my wife shall so request in writing. If my wife shall notify my Trustees of her desire at any time to give up her home, or

in the event of her death, or in the event of her remarriage, whichever event first occurs, said property shall thereafter be treated as part of the principal of my residuary trust."

The present account is filed because of the claim of the life tenant, Janet Adamson Page: (1) To part of the gain realized upon the sale of premises 44 Spring Mill Road, Villanova, by reason of her contribution to the purchase price; and (2) the renovation of the kitchen of said premises at her expense. Appropriate objections to the account were filed by her raising these questions for determination.

The parties have stipulated the facts. In January 1949, Mrs. Page, claimant, asked the accountants, under the exercise of the power set forth in item sixth of the will, to purchase premises known as 44 Spring Mill Road, Villanova, as a home for her, and under date of January 28, 1949, wrote the accountants as follows: "Gentlemen: I have made an inspection of the present home of Ernest L. Biddle on Spring Mill Rd., Villa Nova, Pa. I find that this home is satisfactory for my present needs. I request that you, as trustees under the will of L. Rodman Page, dated April 26, 1946, purchase this home for me at a cost of $25,000.00 in accordance with paragraph six of said will. Janet Page, Janet Adamson Page."

After considerable negotiation between the accountants and the owner of the premises, the property was offered to the accountants by the owner at the price of $30,000. The accountants informed Mrs. Page that they could, under the terms of decedent's will, expend no more than $25,000. On receiving that information Mrs. Page wrote accountants a letter dated February 7, 1949, which read as follows: "Gentlemen: Supplementing my request to you of January 28th, that you purchase with estate funds the Ernest L. Biddle property on Spring Mill Road, Villa Nova, for $25,000 in

accordance with paragraph six of Mr. Page's will, I write to say that I am paying Mr. and Mrs. Biddle the additional sum of $5,000 as their asking price is $30,000, which I am willing to do in view of the fact that the property is to be purchased as a home for me. This payment of $5,000 is not to be considered as a loan or advance by me to the estate. I do not require it to be repaid and I disclaim any ownership in the title to the property, which is to belong exclusively to the estate. Very truly yours, Janet Page, Janet Adamson Page."

On the basis of that letter of February 7, 1949, the purchase of the premises was made and title taken in the name of the accountants, with settlement on February 8, 1949, the accountants contributing $25,000 as indicated and claimant contributing $5,000.

On or about September 28, 1955, claimant, Mrs. Page, expended the sum of $3,876.40 on altering and modernizing the kitchen in the premises. The expenditure was approved by the accountants, they advancing to her that sum from the principal of the trust, with the understanding that the principal account should be reimbursed in that amount by payments from income to which claimant would be entitled. Reimbursement in the amount of $228.60 was made, with the result that the balance of the advance to Mrs. Page is now $3,647.80, as shown in the account. It is agreed that the alterations to and the modernization of the kitchen added to the value of the premises and added to its saleability in an unascertainable degree.

In the latter part of 1957, Mrs. Page informed the accountants that she no longer desired to reside in the premises and thereupon the accountants negotiated for the sale of the premises and sold the same on November 26, 1958, with the result as follows: Gross proceeds of sale, $42,000; expenses of sale, $2,566.20; net proceeds, $39,433.80; cost to accountants, $25,000;

proceeds in excess of accountants' contribution, $14,433.80.

Accountants advised the court that they will be required to pay an income tax in the amount of $1,468.50, which results in a net enrichment to the estate in excess of accountants' contribution of $12,965.30.

If Mrs. Page's claims are admitted in the full amount of $8,876.40, this trust still stands to make a profit of $4,088.90.

The question submitted is whether Mrs. Page is entitled to any of the net profit realized upon the sale of the property by reason (1) of her contribution to the purchase price or (2) the renovations of the kitchen.

Where a life tenant has made a contribution to the trust either by way of part of the purchase price or by paying for improvements, whether the life tenant should be reimbursed depends upon the intent with which said payments were made.

Ordinarily profits on the sale of real estate held as an asset of a trust belong to principal: Section 3 of the Principal and Income Act of July 3, 1947, P. L. 1283; Cf. Rufe Estate, 1 D. & C. 2d 86 (1954).

The question then becomes, what was the intention of this life tenant as it relates to the $5,000 payment?

After consideration of the able argument of counsel and their briefs submitted, I conclude that in the circumstances of this case Mrs. Page is entitled to her $5,000 contributed at the time the purchase price was paid. In her letter claimant states that she is paying to the sellers the additional sum of $5,000 required to make up the total purchase price of $30,000. She then states: "This payment of $5,000 is not to be considered as a loan or advance by me to the estate. I do not require it to be repaid and I disclaim any ownership

in the title to the property which is to belong exclusively to the estate."

It is important to observe that this letter does not expressly deal with the question now before the court, namely, distribution of a possible cash profit on resale of the house. Claimant states that her $5,000 contribution is not a loan to the estate. By this statement she agrees that she is not requesting or asking the trustees to guarantee the repayment of her $5,000. After again stating that she does not require it to be repaid she states that she does not claim any "ownership in the title to the property." In the court's view, this statement means simply that she will assert no claim of undivided fee ownership by reason of her $5,000, that the legal title and control thereof is to remain in the trustees.

It is important also to remember that Mrs. Page, claimant in this proceeding, is not now asking the trustees to repay her any sum on the basis of any loan made by her to the estate; she is not claiming any ownership in the title to the property. Her claim relates only to the distribution of cash profit realized on the resale. All that her letter of February 7, 1949, amounts to is an unqualified statement by her that she does not consider the trustees to have guaranteed to her the repayment of her $5,000 from other funds of the estate or to have given her any part of a legal title by way of an undivided interest in the property by reason of her $5,000 payment. There is nothing in the letter which states expressly or by inference that after the estate has received back its $25,000, claimant would not seek reimbursement of her $5,000 out of any net profit from a resale of the property. All that the accountants requested and all that they received by this letter, was a commitment by claimant that she would not seek to deplete the trust funds further by treating her $5,000 as a loan to the trustees, which she

would be entitled to receive back from the trust assets even though the property did not on resale bring enough to reimburse the trustees for the $25,000 expended by them. What she is saying in effect is: "I will take my chances on this property being worth at least $30,000 and if it turns out that it isn't I will suffer the loss and not you. You will have control of the title and I am not asking you to make any guarantee that I will receive my $5,000 back regardless of the outcome."

For the above reasons I deem it equitable and just that her objection be sustained and that out of the proceeds of the sale of this real estate the $5,000 be returned to her. Even in this aspect of the matter the trust estate still is earning a net over-all profit of $4,088.90.

Turning finally to the claim for reimbursement for kitchen renovations, in an almost parallel situation in Hunsicker's Estate, 51 D. & C. 302 (1944), a similar question was presented to Judge Holland in which he said, inter alia, on page 305: "We see a difference between the case of an ordinary volunteer without mistake, coercion or request unconditionally conferring a benefit upon the property of another who was a total stranger to the benefactor insofar as their property relations are concerned and the case of a cestui que trust of a property who has a definite equitable though not legal interest therein voluntarily conferring a benefit upon the trustee who holds the property for said cestui que trust. Mrs. McGrath according to the terms of the trust had the right to demand that the trustee purchase the property at a cost not to exceed $6,000 and the trustee having so purchased it she had the exclusive right to use, occupy, and enjoy it until the termination of the trust or unless she died previous thereto. She had the equitable beneficial interest in the property during this period.

The trustee, according to the restrictions in the trust, could not expend more than $6,000, but we see no reason why she, knowing her equitable interest therein, and knowing that she could not be dispossessed until she desired to give up the possession, could not make such additional expenditures out of her own funds as to increase, according to her wishes, the comfort, convenience, and enjoyment of herself and family in the use of the property. Furthermore, it seems equitable that, at the sale of the property, what the trustee had contributed, according to the terms of the trust, and what she had contributed, should be respectively returned to them except that the trust would have the priority of being reimbursed to the full extent of the original investment. . . . . It cannot be said that she was a mere volunteer, as in the ordinary case, but, on the contrary, was putting the improvements in a property in which she had the clear right of possession, and in which she had an equitable interest, therefore, it might be said, she was improving her own property, or at least improving the property of which the trustee held the legal title but of which she was the exclusive beneficiary. For these reasons, we deem it equitable and just that her request should be granted, and that out of the proceeds of the sale $6,000 should be returned to the principal of the trust and the excess of $1,250 be paid to Mrs. McGrath after payment thereout of the expenses of this proceeding, including attorney's fee."

Objection no. 2 is therefore sustained.

The accountants requested and are allowed additional credits for disbursements since the filing of the account in the amount of $74.

Subject to the views expressed in this opinion regarding the allowance of the two claims of Mrs. Page, the net balance for distribution is awarded as sug-

154

gested under the last paragraph of the petition for adjudication.

The account is confirmed, and it is ordered and decreed that Girard Trust Corn Exchange Bank, successor by merger to Corn Exchange National Bank and Trust Company, Philadelphia, Richard K. Page, and L. Rodman Page, trustees for Janet Adamson Page, as aforesaid, forthwith pay the distributions herein awarded.

And now, November 5, 1959, this adjudication is confirmed nisi.